IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHERYL BRITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-3210 |
| | ) | |
| JESSE WHITE – SECRETARY OF STATE VEHICLE SERVICES, | ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendant Jesse White's Motion for Summary Judgment (d/e 18). Plaintiff Cheryl Britz's pro se Complaint (d/e 2) alleges that she suffered employment discrimination that is prohibited under Title VII of the Civil Rights Act of 1964 (Title VII) while she was an employee of the Office of the Illinois Secretary of State, specifically sexual harassment resulting in her constructive discharge. See 42 U.S.C. § 2000e-5. Defendant Jesse White is the Illinois Secretary of State.[1]  Britz alleges claims against White in his official capacity.  White

---

[1] The Court notes that the Complaint incorrectly identifies White as "Jessie White."

1

moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons set forth below, the Motion for Summary Judgment is allowed.

## BACKGROUND

Plaintiff began working at the Secretary of State's Office in early 2002.  <u>Memorandum in Support of Motion for Summary Judgment (d/e 19) (Defendant's Memorandum)</u>, Ex. 1, <u>Deposition of Cheryl Britz (Britz Dep.)</u>, p. 23-24.  She asserts that she was subjected to five specific instances of sexual harassment by Janet Russell.  Russell, who was previously a defendant in this action, was Plaintiff's supervisor during the incidents at issue.

According to Plaintiff, the first incident occurred when she was returning to her work area from a break.  Plaintiff states that, as she was entering the work area, Russell came up to her, hugged her, and said "I love you so much."  <u>Britz Dep.</u>, p. 30.  Plaintiff asserts that, on another occasion, in approximately August 2005, she was standing at her cubicle, wearing a skirt.  Plaintiff states that Russell walked up to her and "grabbed the bottom of her skirt with her hands, as if to tug on it to pull it down indicating that she thought it was too short."  <u>Id</u>., p. 30-31.

Plaintiff asserts that, on December 16, 2005, she was standing at her

2

desk, leaning over to write something on a piece of paper when Russell came up behind her and slapped her on her rear end, "pretty hard." Britz Dep., p. 31-32. Plaintiff states that she said, "hey, that was my butt," to which Russell responded, "oh, I know. It was just sticking out there, though." Id., p. 32. According to Plaintiff, on December 20, 2005, she was sitting at her desk typing when Russell came up behind her and tugged on her hair. Id. Plaintiff states that she sat at her desk for thirty minutes after this incident, growing more upset. Plaintiff asserts that she then went to Russell and asked for permission to go speak to her union representative. Id. According to Plaintiff, Russell said "no problem," and Plaintiff reached up to grab the appropriate paperwork off of a filing cabinet. Id. Plaintiff asserts that, as she reached up to grab the form, Russell poked her in her side. Id. According to Plaintiff, she then went to speak to the union representative.

While meeting with her union representative, Plaintiff filled out a Personnel Incident Reporting Form. Britz Dep., p. 29, 33; Defendant's Memorandum, Ex. 3. On the form, Plaintiff alleged that she had been subjected to sexual harassment on several occasions, but that she had failed to write down the dates of the incidents. Defendant's Memorandum, Ex. 3, p. 1. Plaintiff wrote that, at one time, she entered a room and Russell

3

hugged her and told her that she loved her so much. According to Plaintiff, on another occasion, Plaintiff was wearing a jean skirt and standing at her desk when Russell came up to her and started pulling on her skirt and touching her leg. Plaintiff also recounted the incident on December 16, 2005, as follows. She was at her desk, writing, when "Janet came up to [her] and slapped [her] on [her] butt." Id., Ex. 3, p.1. Plaintiff states that she "yelled out, hey that is my butt," to which Russell responded, "yeah but it was just sticking out there." Id., Ex. 3, p. 1-2. Plaintiff also reported the two separate incidents on December 20, 2005. Plaintiff stated that she was sitting at her desk typing when Russell walked by and tugged on the bottom of her hair. Id., Ex. 3, p. 2. According to Plaintiff, she went into Russell's office approximately thirty minutes later to get permission to see her union representative. Plaintiff states that while she was reaching up to get the required paperwork, Russell jabbed her in her side. Id., Ex. 3, p. 2.

Approximately one week after Plaintiff made the written complaint, Plaintiff went to the assistant administrator and demanded a new supervisor. Britz Dep., p. 49. Plaintiff was transferred to a new supervisor, Katie Dumbacher. Id., p. 50. At some point, Russell was transferred to a different floor. Plaintiff left the Secretary of State's Office on March 31,

4

2006, to take a position with another state agency. Id., p. 23. Plaintiff agrees that from December 20, 2005 until the time she left the Secretary of State's Office, there were no further instances of sexual harassment by Russell. Id., p. 52.

The Secretary of State's Office has a sexual harassment policy, upon which all of its employees receive training. Id., p. 27; Defendant's Memorandum, Ex. 2. Britz received training on the sexual harassment policy in the summer of 2005. Britz Dep., p. 28. The policy requires an employee who is subjected to or witnesses sexual harassment to report it. Defendant's Memorandum, Ex. 2, p. 3. Plaintiff concedes that she did not complain to management about Russell's behavior at any time prior to December 20, 2005. Id., p. 35.

## ANAYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving

5

party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact and that judgment as a matter of law is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). When a properly supported motion for summary judgment has been made, the party opposing summary judgment may not merely rest on the pleadings but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "A party must present more than mere speculation or conjecture to defeat a summary judgment motion." Liu v. T & H Machine, Inc., 191 F.3d 790, 796 (7th Cir. 1999). The Court must consider the evidence in the light most favorable to the non-moving party, here Britz, and draw all reasonable inferences in her favor. See Anderson, 477 U.S. at 255.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment," based on the individual's gender. 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has expressly recognized that Title VII prohibits employers from "requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17,

21 (1993).

Plaintiff does not claim that she was subjected to a tangible, materially-adverse employment action. Plaintiff concedes that she was never disciplined, fired, or had duties reassigned because of sexual harassment. <u>Britz Dep.</u>, p. 53. Instead, Plaintiff claims that she was subjected to a hostile work environment that eventually led to her constructive discharge. In order to succeed under a hostile work environment theory, she must establish that "'(1) she was subjected to unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability.'" <u>Whittaker v. Northern Ill. Univ.</u>, 424 F.3d 640, 645 (7th Cir. 2005) (quoting <u>Rhodes v. Ill. Dep't of Transp.</u>, 359 F.3d 498, 505 (7th Cir.2004)).

Defendant asserts that he is entitled to summary judgment because Plaintiff is unable to establish (1) that Russell's conduct was severe or pervasive enough to create a hostile work environment, (2) that the conduct at issue was directed at her because of her sex, or (3) any basis for employer liability. The Court turns first to the hostile work environment issue.

7

In order to constitute a hostile work environment, "the alleged harassment must be both subjectively and objectively so severe or pervasive as to alter the conditions of her employment and create an abusive working environment." Whittaker, 424 F.3d at 645 (internal quotations and citation omitted). "In determining whether the environment was objectively hostile, a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." Id. (internal quotations and citation omitted). The Seventh Circuit has noted, "[t]he workplace that is actionable is one that is 'hellish.' " Id. (internal quotations and citation omitted).

The Seventh Circuit examined the issue of an actionable hostile work environment in Baskerville v. Culligan Int'l Co.. See Baskerville, 50 F.3d 428 (7th Cir.1994)). The Baskerville Court recognized that "the concept of sexual harassment is designed to protect working women from the kind of . . . attentions that can make the workplace hellish." Id. at 430. The Seventh Circuit grouped "sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied;

uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures" on one side and "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" on the other. Id. The "line between a merely unpleasant working environment on the one hand and a hostile or deeply repugnant one on the other" is not a bright one. Id. at 431.

In Baskerville, the Seventh Circuit held that the plaintiff could not establish an objectively severe environment even though, over a seven-month period, the plaintiff's supervisor had: called her a "pretty girl;" grunted when the plaintiff wore a leather skirt to the office; told the plaintiff that her presence made the office "hot;" commented that an announcement actually meant "All pretty girls run around naked;" used the term "tilly" to refer to women; told the plaintiff that he left the company Christmas party early to avoid losing control at the sight of so many "pretty girls;" and suggested to the plaintiff that he consoled himself by masturbating in his wife's absence. Id. at 430. The Court of Appeals observed that the supervisor was "not a man of refinement," but concluded that no reasonable jury could find that his actions created a hostile work environment and, thus, defendant was entitled to summary judgment. Id. at 431.

9

Viewing the evidence in the instant case in the light most favorable to Plaintiff, Plaintiff was subjected to five instances of harassment by her supervisor over a period of approximately six months. The Court recognizes that each of these incidents included at least minor physical contact. However, this contact, although not expected in the workplace, was fairly mild and not overly sexual in nature. In assessing hostile work environment claims, it is also important for the Court to take into account what did not occur. Whittaker, 424 F.3d at 646. In the instant case, Russell never propositioned Plaintiff, nor did she make any inappropriate comments or comments of a sexual nature; the "I love you so much" comment was a generalized statement that did not appear to be a sexual overture. The Court further notes that there is no evidence that Russell's conduct unreasonably interfered with Plaintiff's work performance. In fact, Plaintiff testified that she generally received the maximum amount of extra stipend pay during the time period at issue for quantity of work completed. Britz Dep., p. 14-15. Considering the totality of the circumstances, the definition of sexual harassment adopted by the Seventh Circuit in Baskerville, and the nature and number of incidents, the Court finds that Plaintiff fails to present evidence such that a reasonable jury could be persuaded that Russell's

conduct, objectively speaking, was severe and pervasive enough to create a hostile work environment. Therefore, Defendant is entitled to summary judgment.

Alternatively, even if Plaintiff were able to establish a hostile work environment, Defendant would nevertheless be entitled to summary judgment because Plaintiff cannot establish the third necessary element, i.e. that the conduct at issue was directed at her because of her gender. Title VII by its express terms is designed to eliminate discrimination; thus, proof of different treatment of the sexes is necessary. The Seventh Circuit has defined the "critical issue" in hostile work environment cases as "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. Inappropriate conduct that is inflicted regardless of sex is outside the statute's ambit." Berry v. Delta Airlines, Inc., 260 F.3d 803, 808 (7th Cir. 2001). The record in the present case is devoid of evidence that Russell harassed Plaintiff because of her gender. As the Seventh Circuit has repeatedly noted, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its

version of the events." <u>Hammel v. Eau Galle Cheese Factory</u>, 407 F.3d 852, 859 (7th Cir.2005) (internal quotation marks and citation omitted). Because Plaintiff fails to identify any evidence that would support a jury finding in her favor on this essential element, summary judgment is appropriate on this basis as well.

Similarly, even if Plaintiff were able to establish the first three elements, Defendant would nevertheless be entitled to summary judgment because Plaintiff cannot establish a basis for employer liability. Employers may be held vicariously liable based on an actionable hostile environment created by a supervisor. <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807 (1998). However, if no tangible employment action is taken, the employer may raise an affirmative defense to liability or damages by establishing the following factors: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." <u>Id</u>. In the instant case, the undisputed evidence establishes that this defense applies, shielding Defendant from liability. The Secretary of State's Office had a sexual harassment policy in place and trained its

employees, including Plaintiff, on the policy. The policy requires employees to report sexual harassment and sets out numerous avenues for them to do so. Plaintiff, however, failed to report any of the instances until December 20, 2005. The Court further notes that Plaintiff concedes that no harassment occurred after she filed the incident report. Thus, summary judgment is appropriate on this basis as well.

To the extent Plaintiff is pursuing a constructive discharge claim, this claim fails as well. As previously noted, for an atmosphere of sexual harassment or hostility to be actionable, the offending behavior must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. The Supreme Court has recognized that "A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004). As previously noted, Plaintiff fails to present evidence such that a reasonable jury could be persuaded that Russell's conduct was severe and pervasive enough to create a hostile work environment. Certainly, there is no evidence to support a finding that

13

Plaintiff's working conditions were so intolerable that a reasonable person would have been compelled to resign. Once Plaintiff reported Russell's offensive behavior, it stopped, and shortly thereafter, Plaintiff was separated from Russell. Summary judgment is appropriate.

THEREFORE, for the reasons set forth above, Defendant Jesse White's Motion for Summary Judgment (d/e 18) is ALLOWED. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:      December 21,         , 2007.

FOR THE COURT.

                                              s/ Jeanne E. Scott
                                              JEANNE E. SCOTT
                              UNITED STATES DISTRICT JUDGE